# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| JOSHUA BRADY SKIPWORTH, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> CAPTAIN PAGE, ET AL., ) <br> ) <br> Defendants. ) | No. 15-1246-JDT-egb |

## ORDER DISMISSING CLAIMS,
## CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On September 30, 2015, Plaintiff Joshua Brady Skipworth ("Skipworth"), who is currently an inmate at the Henry County Correctional Facility ("Jail") in Paris, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) After Plaintiff submitted the necessary application, the Court issued an order on October 15 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) Skipworth filed an amended complaint on October 23, 2015. (ECF Nos. 8 & 8-1.) The Clerk shall record the defendants as Captain ("Cpt.") First Name Unknown ("FNU") Page; Sergeant ("Sgt.") Jerry Wilson; Corporal FNU Balote; Officer Chris Page; Sgt. Powell; and Officer Hunter Wade.

I. The Complaint

Skipworth alleges that between April and May 2015, Defendant Cpt. Page assigned him a cell with a federal inmate, Justin Woodard ("Woodard"). (ECF No. 8 at 1.) Skipworth had

previously been in a cell with a state inmate such as himself. (*Id.*) Skipworth alleges he had previously told Defendant Cpt. Page that he was a state inmate and was not supposed to be housed with federal inmates "because of conflict of interest." (*Id.*) Skipworth alleges he was already in segregation but had been given an hour out to use the phone. (*Id.*) As Skipworth went down the stairs, Woodard was at the bottom of the stairs, holding a broom. (*Id.*) Skipworth alleges that Woodard hit him in the mouth and jawbone with the broom. (*Id*) As Skipworth was "fighting for [his] life," Defendants Cpt. Page, Wilson and Officer Page rushed into segregation and spayed him until he was gagging, making it impossible for him to breathe.

Skipworth further alleges that on October 20, 2015, Defendants Powell and Wade received Skipworth's legal documents to be copied, but Defendant Wade only brought back half the documents. Wade later told Skipworth that Defendant Powell had dropped the second half of the documents on the floor. Skipworth believes that Powell read his documents. (ECF No. 8-1 at 1.)

Skipworth asks that the Defendants be prevented from retaliating against him. He also seeks to be assigned a prison job and asks "that inmates be allowed to witness documents of legal papers being copied." (*Id.*)

## II. Analysis

A.   Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>    (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>    (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept

3

"fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Skipworth filed his complaint pursuant to actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Skipworth apparently alleges that the Defendants failed to protect him from the attack by Woodard. For a convicted prisoner, claims regarding a prisoner's health and safety arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). For pre-trial detainees, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being punished.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Instead, pre-trial detainees held in state custody are protected against mistreatment by prison officials under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2000); *Liscio v. Warren*, 901 F.2d 274, 275-76 (2d Cir. 1990). However, even though it appears that Skipworth was a pre-trial detainee at the time of

the assault, his claims will be analyzed under Eighth Amendment principles because the rights of pre-trial detainees are equivalent to those of convicted prisoners. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)).[1]

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

---

[1] The Supreme Court held, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. It is unclear whether or to what extent the holding in *Kingsley* may affect the deliberate indifference standard for claims concerning an inmate's health or safety, which the Sixth Circuit applies to both pre-trial detainees and convicted prisoners. *See Morabito v. Holmes*, 628 F. App'x 353, 357-58 (6th Cir. 2015) (applying, even after the decision in *Kingsley*, the objective reasonableness standard to pretrial detainee's excessive force claims and the deliberate indifference standard to denial of medical care claim). Absent further guidance from the appellate courts, this Court will continue to apply the deliberate indifference analysis to claims concerning a pre-trial detainee's health and safety.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

7

Skipworth alleges that he was put in danger by having a federal inmate as a cell mate. However, he also alleges that he was actually in segregation at the time of the assault, having been let out temporarily so he could use the telephone. Further, there is no allegation that Defendant Cpt. Page was aware of any specific danger to Skipworth by Woodard. Allegations that any Defendant may have failed to follow Jail procedures are insufficient to establish such knowledge.

To the extent Skipworth contends that being sprayed with a chemical agent amounted to excessive force, he has no claim. It is clearly alleged that he and Woodard were fighting at the time, and Skipworth does not allege that he suffered any lasting effects from the spray. Under those circumstances, the Fourteenth Amendment's objective reasonableness standard is not violated by the Defendants' use of a chemical agent to restore order.

Skipworth also has asserted that his legal documents were not being copied properly and were not all returned to him. (ECF No. 8-1.) However, the complaint does not assert a valid claim for denial of Skipworth's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182 F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The complaint does not allege that Skipworth suffered any such injury because of the Defendants' actions.

The Court cannot require the Jail to provide Skipworth a job. "[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986)) (additional citations omitted). The Sixth Circuit has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job. *See, e.g., Shields v. Campbell*, No. 03-5635, 2003 WL 22905312, at *1 (6th Cir. Nov. 26, 2003); *Carter v. TDOC*, 69 F. App'x 678, 680 (6th Cir. 2003); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001); *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Rather, prison administrators may assign inmates jobs and wages at their discretion.

*Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Anderson v. Hascall*, 566 F. Supp. 1492, 1494 (D. Minn. 1983); *Chapman v. Plageman*, 417 F. Supp. 906, 908 (W.D. Va. 1976).

III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). The Court concludes that leave to amend is not warranted in this case.

IV. Conclusion

The Court DISMISSES Skipworth's complaint as to the Defendant for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

10

1915A(b(1). Leave to Amend is DENIED because the deficiencies in Skipworth's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE